By the Court.
This was a proceeding brought in the superior court of Cincinnati by The Trustees of The Cincinnati Southern Railway, defendants in error, in which they sought a decree fixing the amount of compensation due Washington T. Porter, plaintiff in error, for certain services rendered to them, which are referred to in the petition. They prayed that on the payment of the amount so fixed, the defendant be required to release and discharge the plaintiffs from all claim and demands by reason of such services.
The pleadings in the case are quite voluminous, and it is unnecessary to set them out in detail.
It is conceded that the defendant was asserting a claim against the plaintiffs for $25,000, as fees *30 for services rendered by him as attorney in certain appropriation proceedings, and in matters connected therewith, which proceedings were brought by the plaintiffs pursuant to a statute passed in 1898, which authorized an expenditure of $2,500,-000 to secure certain necessary terminals.
The answer of the defendant sets forth at length, and in detail, the particular services rendered by him, and there is no substantial dispute with reference to that feature of the case.
It is conceded that payments aggregating the sum of $7,100 have been made to Mr. Porter on account, and that the trustees fixed the amount to be paid him for all services rendered to them by him as attorney at $8,150. This action by the trustees was taken pursuant to the claim made by them that they were empowered to fix the compensation by reason of the resolution of the board by which Mr. Porter was employed, as follows: “Ordered that W. T. Porter be and he is hereby appointed attorney for the board at a compensation of $50.00 per month subject to the will and pleasure of the board both as to term of service and rate of compensation.” A vast amount of testimony was taken on the trial of the case in the superior court and a voluminous record made.
The trial court found that the defendant had been employed by the plaintiffs as attorney “at a compensation of fifty dollars per month” and such additional compensation as might .be fixed by the board; that on January 30, 1905, the board fixed the compensation of the defendant at $6,050 in addition to $2,100 theretofore paid defendant on *31 account; and that on May 7, 1908, there was paid on account, without prejudice to the rights of the parties, $5,000. The court further found that there was due the defendant the sum of $1,050, being the balance of the amount allowed by the board, with interest to July 1, 1912, and ordered its payment.
This judgment was affirmed by the court of appeals and by this proceeding the plaintiff in error seeks to reverse the judgments of the courts below.
The contention of the defendants in error, which has been upheld, is that the board of trustees had final and conclusive power to fix the amount to be paid for Mr. Porter’s services; and that the courts cannot inquire into the question concerning the reasonableness of the action of the board. Considerable testimony was offered by Mr. Porter, which tended to prove that the value of the services which it is conceded that he rendered was very much more than the sum fixed by the board. It is his contention that he is entitled to be paid the reasonable value of those services. He necessarily contends that the action of the board of trustees is not final and does not conclude his rights. Therefore, it is at once seen that the important question in the case is, Did the order of the board, under which Mr. Porter was employed, give it the sole authority to determine the amount of his compensation and also to determine that the services in the condemnation cases were rendered pursuant to that resolution? If so, the judgments below should be affirmed; and, if not, they should be reversed.
As is well known the Cincinnati Southern railway is owned by the city of Cincinnati, and is oper *32 ated by a corporation to whom it is leased. It was constructed pursuant to certain statutory enactments beginning in 1869. After the railway had been put into operation it was discovered that sufficient terminals had not been provided. Subsequently the statute of 1898 was passed, by which the trustees were authorized to borrow $2,500,000 to be used in the construction of terminals, under the terms and safeguards provided in the act. In carrying out the plan, a number of condemnation suits were brought, and property secured thereby, which required an expenditure of about $1,500,000. It is conceded that a very large part of the labor connected with these matters was entrusted to and performed by Mr. Porter, and these are the services for which the trustees sought to have compensation fixed in this proceeding.
It is conceded that for many years prior to the events above related, Mr. Porter had been in the employ of‘the board as its attorney, sometimes at $50 a month, and for a while at $100 a month. The order above set out was made April 18, 1894, when Mr. Porter returned to the service of the board after an absence of several years. In considering the resolution of 1894 it must be conceded that it is not clearly drawn. The language is: “W. T. Porter be and he is hereby appointed attorney for the board at a compensation of $50.00 per month subject to the will and pleasure of the board both as to term of service and rate of compensation.” However, there is one thing that is clear, viz., the initial employment at a fixed compensation of $50 per month. Then follows the provision “subject to *33 the will and pleasure of the board both as to term of service and rate of compensation;” that is, the board might at any time terminate the employment or it might at its “will and pleasure” continue the employment and change the “rate of compensation.” If it terminated the employment that would be an end of the matter. If it changed the rate of compensation, it would be incumbent upon the board to give expression to its “will and pleasure” by a resolution or order equally formal, and equally well authenticated, and made before any services were rendered under the changed’ rate. Without some action of that nature by the board it would not have authority to make allowances to Mr. Porter for any services rendered pursuant to the resolution in addition to the $50 a month, because, as to compensation, unchanged by the “will and pleasure” of the board, the amount is definitely fixed at $50 per month.
We think that sound public policy forbids that public officials should be permitted to definitely fix a certain sum to be paid for services to be rendered to the public, and at the same time reserve to themselves the arbitrary power to add to the sum named in the contract after the services are rendered. We think there is much in the contention of counsel for the plaintiff in error that this would open the door to favoritism and fraud.
It is said in 9 Cyc., 481: “It is not easy to give a precise definition of public policy. It is perhaps correct to say that public policy is that principle of law which holds that no person can lawfully do *34 that which has a tendency to be injurious to the public or against the public good, which it may be designated, as it sometimes has been, the policy of the law or public policy in relation to the administration of the law. * * * The test is the evil tendency of the contract and not its actual injury-to the public in a particular instance.”
We think, therefore, that the courts below were in error in holding that the board had the conclusive right under the resolution of 1894 to determine the question of additional compensation after the work is done.
Now, it is the contention of Mr. Porter that the services rendered by him in the condemnation proceedings were not rendered pursuant to the resolution of 1894 and that that resolution had no relation to those services.
The decisive question in the case is, Were the services for which compensation is now claimed rendered in pursuance to the resolution in question ?
It is contended by Mr. Porter that his labors were so onerous and exacting, and the responsibility in connection with them so great and important, as to conclusively indicate that the services were not .rendered pursuant to a resolution which provided for the payment of $50 a month; and, further, that the parties themselves thus treated the entire subject. The trustees made payments to Mr. Porter which were in excess of $50 a month, and he contends that this was such a practical construction placed upon the transaction by the parties themselves as to be entitled to great weight in de *35 termining whether the services here in question were rendered under the order in question.
We think that the learned courts below were in error in holding that the resolution of the board adopted in 1894 was conclusive of these matters and gave the board conclusive authority to fix the value of the services.
The defendant below should have been permitted to show, if he could have done so by legal testimony, that the services in question were not rendered pursuant to the resolution in question, and, if they were not, should have been permitted to prove the value of those services.
For these reasons the judgments below will be reversed.

Judgments reversed.

Nichols, C. J., Newman, Jones, Johnson and Donahue, JJ., concur.